(13 App. Div. 453.)

## BRENNAN v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. MUNICIPAL CORPORATIONS—VACATING TAX SALE—LIMITATION OF ACTIONS.

Laws 1880, c. 275, § 9, providing that actions against the city of Buffalo "to test the regularity or validity of any tax levied or assessment made" must be commenced within a certain time, does not apply to an action to set aside a tax sale as a cloud on plaintiff's title, though the action is predicated on the invalidity of the assessment.

2. SAME—SEVERANCE OF JUST AND EXCESSIVE TAXES.

A taxpayer is entitled to have an assessment against his land, which was made fraudulently and arbitrarily, for an excessive amount, set aside entirely, not merely as to the part which is excessive.

Appeal from superior court of Buffalo, trial term.

Action by Caroline K. Brennan against the city of Buffalo to set aside a tax sale and the certificate issued thereon, and to vacate the assessment. From so much of a judgment entered on a decision of the trial judge as sustains the assessment except as to the sum of $581, plaintiff appeals, and from so much of the same judgment as reduces the assessment by said sum defendant appeals. Reversed on plaintiff's appeal and affirmed on defendant's appeal.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Adolph Rebadow, for plaintiff.
Charles L. Feldman, for defendant.

FOLLETT, J. This action was begun November 19, 1890, to set aside an assessment levied August 1, 1887, on plaintiff's land for the payment of its share of the expenses of paving School street, in the city of Buffalo, and the sale of plaintiff's land so assessed, made April 29, 1890, for the nonpayment of the taxes, and the certificates of sale issued by the defendant's comptroller to the defendant in pursuance of said sale. By section 23 of title 6 of defendant's charter (chapter 519, Laws 1870), as amended by section 16 of chapter 181 of the Laws of 1885, it was provided that, in case a local improvement should be ordered by the common council, the expense of which would exceed the sum of $20,000, to be defrayed by money raised by a local assessment, such assessment might be paid in five equal annual installments; the first to be due from and after the date of the first publication of the notice of the assessment by the treasurer of the city, pursuant to section 17 of title 6 of the charter, and the remaining installments in one, two, three, and four years from and after the date of such publication of the notice; all the installments except the first to bear interest at the rate of 6 per cent. per annum, to be computed from three months after the date of the publication of the treasurer's notice. In 1887 the common council of the city of Buffalo ordered that a part of School street should be paved at an expense not exceeding $19,420, which sum was to be assessed upon the property benefited. The expense of this improvement not exceeding $20,000, the assessment therefor could not be paid in installments. Upon the basis of $19,420 the assessment upon the plaintiff's land would have been $2,335.98; but for the purpose of making it appear that the expense exceeded $20,000, so as to enable the payment of the assessment to be made in five equal installments, the assessors, under the direction of the common council, arbitrarily increased the assessment against plaintiff's property by the sum of $581, thus making her assessment $2,916.98, and the total assessment for the improvement $20,001, so that the payment therefor by the various persons whose property was assessed as benefited could be made in five equal annual installments. By the seventh finding the court found:

"That this [the assessment] was done unlawfully, fraudulently, and arbitrarily, and without regard to any benefit to the land of this plaintiff, or any other person, by reason of the improvement aforesaid; and thereby this plaintiff [under her maiden name, Caroline Ketchum] was assessed in said assessment roll [being roll No. 3,790 of the year 1887] at the total sum of $2,916.98."

January 9, 1888, the plaintiff, in ignorance of the unlawful manner in which the assessment had been levied, paid the first annual installment and all arrears of interest to that date, amounting in the whole to $612.53, leaving unpaid four annual installments, amounting to $2,333.61. In 1888 the plaintiff first learned of the manner in which her property had been assessed, and then refused to pay any of the four annual installments then unpaid. After her

refusal, and in 1888, the treasurer of the city added to $2,333.61—the amount of the unpaid assessment—the sum of $490.05 for interest and penalties for nonpayment, making $2,823.66, which sum he returned to the comptroller of the city as the amount then due from the plaintiff on account of the assessment for paving School street. In 1889 the assessors, as a basis for levying the general city tax, divided the plaintiff's property, which had theretofore been assessed as one lot, into two lots, which, for convenience, may be designated as lot "No. 1" and lot "No. 2." The comptroller of the city, instead of placing $2,823.66 upon the entire block, as originally assessed, put the entire assessment against lot No. 1, and delivered the roll to the treasurer of the city, and thereafter it became the duty of the treasurer to make transcripts of all unpaid assessments, general and special, and deliver them to the comptroller, who was required to annex his warrant to said transcripts, commanding the collector to collect from the persons named in the transcripts. The treasurer returned the transcript to the comptroller, showing that taxes assessed against lot No. 1 had not been paid, and showing that the taxes against lot No. 2 had been paid. Upon receiving the transcript, the comptroller, instead of issuing his warrant for the collection of the taxes assessed against lot No. 1, changed the assessment so as to assess the sum upon both lots, as assessed in 1888, and then issued his warrant to the collector, upon which the plaintiff's entire premises were, April 29, 1890, sold, bid in by the city, and a certificate of sale issued to the city, which now holds it, and claims to be the owner of the premises by virtue thereof.

The defendant concedes that the action of its common council and of its assessors in imposing the tax in 1887 was illegal, but insists that the plaintiff is barred of all remedy by section 9 of chapter 275 of the Laws of 1880, which provides:

"Any action or proceeding commenced by any person or persons to test the validity or regularity of any tax levied or assessment made shall be commenced within one year from the time of the delivery of the roll in which said tax or assessment is contained, to the treasurer; the invalidity or irregularity of any tax or assessment shall not be available as a defense to any action or proceeding commenced after the expiration of one year from the delivery of the roll as aforesaid, for the collection of said tax or assessment, or for the enforcement of any right or title, by virtue of any sale thereunder, unless an action or proceeding to test the validity or regularity of such tax or assessment shall have been commenced within the time hereinbefore limited for commencing the same, and shall be still pending, or such tax or assessment shall have been adjudged to be irregular and invalid."

This statute is pleaded in the answer as a bar to this action. The primary object of this action is to set aside the tax sale, and the certificate issued pursuant thereto, which is now held by the defendant on the ground that such certificate is a cloud on the plaintiff's title. It is not an action or proceeding primarily to test the validity or regularity of the assessment, but to remove a cloud on the title to plaintiff's realty; and it is not within the words of the statute. Special and local statutes in derogation of the general statutes of the state, limiting the time in which a citi-

zen may seek redress for illegal and fraudulent assessments, and the sale of property by virtue thereof, are not to be extended by construction so as to bring within their provisions actions and remedies not within the words of the statute. End. Interp. St. § 343, and cases cited. Zink v. McManus, 49 Hun, 583, 3 N. Y. Supp. 487, affirmed 121 N. Y. 259, 24 N. E. 467, was an action of ejectment, brought to recover land in the city of Buffalo, which was sold April, 1884, for the nonpayment of taxes assessed thereon in 1883. The action was begun May 25, 1887, more than one year after the roll on which the tax was assessed had been delivered to the treasurer of the city of Buffalo. It was insisted by the defendant that the section above quoted was a bar to the action, but it was held that the section did not apply to an action of ejectment brought for the recovery of land sold for the nonpayment of taxes illegally assessed. The general term, in discussing the question, held:

"The first clause of the statute now under consideration applies to equitable actions instituted for the purpose of testing the validity of any assessment made or tax levied upon the property, either real or personal, before the proceedings have been conducted to a sale of the property of the owner, and also to such proceedings as are authorized by the statute to set aside any irregular assessment or erroneous levy of taxes. * * * The limitation created by the statute clearly applies to an action prosecuted to procure a personal judgment against the person assessed, and also to actions or proceedings instituted for the enforcement of any right or title arising out of the sale of property, real or personal, other than real estate assessed, and which was sold to pay the tax levied thereon. In other words, that these provisions have no application when the question litigated relates wholly to the title to real estate which has been sold for the nonpayment of taxes imposed thereon."

It was held that the limitation prescribed by section 9 applied only to "the instances specifically enumerated" therein. The limitation prescribed by the section is not applicable to this action, and the defense that the action is barred by that statute of limitations cannot be sustained.

The trial court, in disposing of this case, adjudged the sale of the plaintiff's premises void, and set aside the certificates of sale as void, and directed that they be canceled, and surrendered to the plaintiff, and further held that the tax assessed against the plaintiff's land should be reduced by the sum of $581, together with all interest, additions, and charges assessed or charged against the plaintiff on account of such sum, thus in this action determining the validity of the original assessment; and granted affirmative relief in respect to it on the assumption that the court could in this action not only pass upon the validity of the assessment, but confirm it in part and set it aside in part. I do not think the exercise of the power in this action was justified. In certain cases the court may declare a tax bad in part and sustain it for the remainder, but I know of no authority for sustaining any part of a tax in case the entire assessment is, as was found in this case, "unlawfully, fraudulently, and arbitrarily" assessed and levied. It may be doubtful whether, in this action, brought to remove a cloud upon the title, and not directly to review the assessment, the court had authority to determine that a portion of the tax was void

and the remainder valid. In Poth v. Mayor, etc., 77 Hun, 225, 28 N. Y. Supp. 365, affirmed 151 N. Y. 16, 45 N. E. 372, it was held that, when an assessment sought to be enforced is made up of legal and illegal items blended in a single assessment, the persons against whom the tax was assessed might recover the whole sum involuntarily paid, in the absence of a statute modifying the general rule, and that his recovery was not limited to the portion of the tax which had been illegally assessed.

The judgment, in so far as it sets aside the sale and the certificates issued thereunder, is affirmed, and in so far as the judgment determines that any portion of the sum assessed for taxes was valid, it is reversed, with costs of this appeal in favor of the plaintiff and against the defendant. All concur.